UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| VANESSA ADAMS | CASE NO. 3:19-CV-00585 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| FRANKLIN PARISH SCHOOL BOARD | MAG. JUDGE KAYLA D. MCCLUSKY |

RULING

Plaintiff Vanessa Adams ("Adams"), an African-American female, filed this lawsuit against Defendant Franklin Parish School Board (the "School Board") alleging claims of retaliation, harassment, and racial discrimination. Pending here is the School Board's Motion for Summary Judgment dismissing Adams's claims [Doc. No. 27].  Adams has filed an opposition [Doc. No. 50].  The School Board has filed a reply to the opposition [Doc. No. 51].

For the following reasons, the School Board's motion is GRANTED.

## I.    FACTS AND PROCEDURAL HISTORY

Adams has worked for the School Board for approximately thirty (30) years as a teacher, administrative assistant, assistant principal, and principal.  She currently works as a curriculum facilitator in the School Board's central office.

In 2011, Adams was working as a curriculum facilitator when she was appointed by the School Board to the position of principal at Gilbert Junior High School.  Adams was the second choice of Superintendent Lanny Johnson ("Johnson") for the position. On October 31, 2011, Johnson issued a written reprimand to Adams regarding improper use of leave, after Adams left the school and went on a cruise without informing Johnson, and improperly entered her time away as sick leave.  On June 28, 2012, Johnson notified Adams of concerns with maintenance of the

Gilbert campus and advised her that the campus grounds should be mowed throughout the school year.

When it was time to determine whether Adams's contract as principal of Gilbert Junior High School should be renewed, Johnson determined it was in the best interest of the School Board not to renew it. His reasons included improper absences/dishonesty, failure to maintain her campus, and decline in student scores.  In not renewing Adams's contract, the School Board's only remaining obligation to Adams would have been to place her back into her last tenured position as a teacher.   Johnson offered Adams the opportunity to resign in lieu of not having her contract renewed, with the agreement to place her back into her prior position as curriculum facilitator in the central office, instead of a lower paying position as a teacher.  Adams accepted Johnson's offer and resigned her position as principal of Gilbert Junior High School on July 1, 2013.

In May 2018, Adams applied for the position of Director of Franklin Parish Head Start. The top two candidates for the position were Adams and Holly Sartin ("Sartin"), a Caucasian female. Adams had 15 years more teaching experience than Sartin; Adams had transitioned to administrative roles, whereas Sartin's experience was only in teaching; and Adams had a higher certification as an Education Leader.

Adams and Sartin participated in interviews with the School Board's diverse, five-person Interview Committee.  Adams scored 184 following her interview; Sartin scored 190.  Following the interview process, the applications and the results of the interviews were presented to Johnson. Johnson elected to hire Sartin, stating that he was relying on the interview process as well as his personal knowledge of each candidate's comparative work performance, including how they

handled themselves.  He further stated he ultimately declined to offer Adams the position based on the 2011 and 2012 incidents [Johnson deposition, Doc. No. 27-6, pp. 33, 35, 36, 45, 47.]

In August 2018, the Student Services position at Franklin High School became open. Although Adams did not formally apply for the position, she did contact Principal Brian Gunter ("Gunter") to express her interest in the position.  Gunter provided two (2) names to Johnson for consideration as potential candidates for the student services position: Charlie Amos, a Caucasian male, who was not employed with the school system at the time, and Adams, without indicating any preference between the two. Johnson offered the position to Amos, who turned the position down.  Johnson then offered the position to another candidate, an African-American female, who was not employed with the school system at the time, and who initially accepted the position but then resigned from employment with the School Board.  Johnson next offered the position to Brian Rogers ("Rogers"), a Caucasian male, who was not employed with the school system at the time, and who accepted.

Around the same time, the principal of Horace G. White retired, effective the 2018-2019 school year.  Adams contends that, before she could apply, Johnson decided to transfer Tara Robbins, a Caucasian female, to the position, and further opted to modify the position from that of principal to that of administrative assistant.   The School Board, on the other hand, contends that when the principal of Horace G. White was originally appointed, the school operated as any other school, with the principal having the same responsibilities as any other principal. However, Horace G. White had morphed from an alternative "school" to an alternative "program." As an alternative program, students and teachers were no longer at the school full time, and students with disciplinary issues would cycle in and out.  Based on the changes to the program, the School Board

3

determined that a principal at Horace G. White was no longer necessary, and the position that was open was changed from principal to administrative assistant, and Tara Robbins was offered and accepted a transfer to the position.  Adams did not apply for the position.

Adams filed an intake questionnaire with the EEOC [Doc. No. 5-2] on August 25, 2018, and her official charge of discrimination based on race and retaliation was signed and sent back to the EEOC on October 12, 2018 [Doc. No. 5-3].  She further alleges she received the EEOC's right to sue notice in February 2019.

On May 6, 2019, Adams initiated this lawsuit against the School Board alleging that she was subjected to harassment, retaliation, and racial discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 United States Code § 2000e, *et seq*; 42 U.S.C. § 1981 ("Section 1981"), and the Louisiana Employment Discrimination Law ("LEDL"), Louisiana Revised Statute 23:301 *et seq*., when she was not selected for positions to which she applied or that were otherwise available.

Pursuant to a motion to dismiss filed by the School Board, this Court dismissed Adams's Title VII and LEDL claims arising from any incidents alleged to have occurred in 2013, or prior thereto. Adams's Section 1981 claims were dismissed with prejudice absent amendment to pleadings, and no amendment has been filed. [Doc. Nos. 6, 7].  Adams's Title VII and LEDL claims remain with respect to selections and appointments in 2018 for the positions of Director of Head Start, Student Services Coordinator at Franklin High School, as well as the alleged principalship at Horace G. White alternative program.

On February 15, 2021, the School Board filed the pending motion seeking the dismissal of Adams's remaining claims of harassment, retaliation, and racial discrimination [Doc. No. 27].

Adams has filed an opposition with regard to her claims of retaliation and racial discrimination; however, she states that she does not oppose summary judgment as to her harassment claim. [Doc. No. 50, p. 1].  The School Board has filed a reply [Doc. No. 51].

The issues are fully briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp*., 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure all of the essential elements of the claim . . . to warrant judgment in [its] favor."

6

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell,* 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

  **B.**  **Analysis**

  The Court will consider Adams's claims of harassment, retaliation, and racial discrimination, in that order.

    **1.**  **Harassment**

  As noted above, Adams does not oppose the granting of the School Board's motion for judgment as a matter of law dismissing her claims of harassment.  Accordingly, the School Board's motion as to Adams's claims of harassment is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

    **2.**  **Retaliation**

  Under Title VII, employers may not retaliate against an employee because the employee opposed a practice made unlawful by Title VII, registered a complaint under Title VII, or participated in an investigation under the law. *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 576–77. Where a retaliation case is based on circumstantial evidence, the Court applies the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  That framework requires the plaintiff to establish a *prima facie* case of retaliation by demonstrating "(1) that [s]he engaged in activity protected by Title VII; (2) that [s]he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the adverse action. *Brown*, 969 F.3d at 577. If the employer satisfies that burden, then the burden returns to the plaintiff to show that the employer's stated reason is pretextual. *Id.*

In its motion, the School Board asserts that it is unclear from Adams's Complaint, and even less clear at the conclusion of the discovery process, what "protected activity" purportedly led to any alleged retaliatory conduct. Other than to make a blanket allegation that the School Board failed to prevent and address any acts of retaliation, the Complaint points to no alleged protected activity.

When asked to specify the protected activity, Adams testified that Johnson retaliated against her for her having been appointed by the School Board in 2011 to be principal at Gilbert Junior High School "against his will," referencing that she was Johnson's second choice for the position [Adams deposition, Doc. No. 27-5, p. 8]. If that is the case, according to the School Board, Adams was not the individual that engaged in the alleged protected activity, but, rather, it was the action of the School Board. In a situation of third-party retaliation, it must be determined whether the plaintiff falls within the "zone of interests" sought to be protected by the statutory provision that forms the basis of the complaint. *Thompson v. N. American Stainless, L.P.*, 562 US. 170 (2011). In other words, the question is whether the alleged retaliatory conduct would dissuade an employee from engaging in protected activity, thus rendering the third party the aggrieved party. The School Board argues here that the School Board is not an employee of itself, and the inquiry should end there. But, going further, any purported retaliatory action against Adams would not have acted to dissuade the School Board, as a collective body, from performing its obligatory

statutory functions.  Therefore, Adams has failed to establish the first prong of her *prima facie* case, according to the School Board.

As to the second and third prongs, the School Board acknowledges that a failure to promote with respect to the Head Start position could constitute an adverse action.  The School Board asserts, however, that there is no causal connection between the alleged protected activity and the alleged adverse action.  The School Board asserts that the seven (7) year period from 2011 to 2018 does not constitute temporal proximity, and that Adams has not demonstrated that the employer knew about the employee's alleged protected activity.  As the final decision maker, Johnson would have had to have known, or at least believed, that Adams had engaged in protected activity.  The School Board asserts, however, that it is implausible that Johnson would have attributed the School Board's decision to Adams, particularly as Adams was Johnson's second choice recommendation. Thus, according to the School Board, Adams has failed to establish a *prima facie* case of retaliation.

In her opposition, Adams does not refute the School Board's arguments.  Rather, Adams asserts that the School Board was aware that she filed a race-based claim of discrimination with the EEOC in 2016, and that her filing of that claim is the protected activity upon which she bases her retaliation claim.

In its reply, the School Board contends that this is the first time that Adams has made the assertion that she engaged in protected activity when she filed an EEOC complaint in 2016; that there is no allegation in Adams's Complaint related to the 2016 EEOC matter; that no questions were posed to Johnson, as the former Superintendent and Rule30(b)(6) deponent, regarding his knowledge of an EEOC complaint filed by Plaintiff in 2016 (or at any other time); and that even

Adams, when specifically asked for the reasons she believed Johnson took retaliatory actions against her, made no mention of the 2016 EEOC complaint. Instead, Adams testified that Johnson retaliated against her for her having been appointed by the School Board in 2011 to the Gilbert principalship "against his will." [Adams deposition, Doc. No. 27-5, pp. 57].

The School Board further asserts that Adams has failed to point to any competent evidence in the record that would support the contention that Johnson was even aware of a complaint to the EEOC in 2016. Where, as here, temporal proximity cannot be inferred, an employee must demonstrate that the employer knew about the employee's protected activity. *See Cox v. DeSoto County, Miss*., 407 F. App'x 848 851-852 (5th Cir. 2011) (finding 13 months an insufficient amount of time to create a causal link).

The School Board concludes that Adams has presented no evidence that would support a causal connection between the 2016 EEOC complaint and the alleged retaliation two (2) years later. Thus, Adams has failed to establish a *prima facie* case of retaliation, and this claim should be dismissed.

The Court agrees with the School Board that Adams has not previously asserted that her cause of action for retaliation was predicated on the alleged protected activity of making an EEOC complaint in 2016.  The law is well-settled that a plaintiff may not rely on new claims raised for the first time in response to a motion for summary judgment. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").  The Court will not consider any facts, offered exhibits, or argument related to Adams's

retaliation claim that is raised for the first time in her opposition to the School Board's motion for summary judgment.

Further, even if the Court did consider this new claim, Adams has failed to present any evidence that Johnson knew of her alleged 2006 EEOC complaint.

Therefore, the School Board's motion seeking the dismissal of Adams's retaliation claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

### 3.      Racial Discrimination

To analyze whether a plaintiff has established a *prima facie* case of racial discrimination under Title VII based on circumstantial evidence, the Court applies the *McDonnell Douglas* framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (*per curiam*); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). Under that framework, a plaintiff must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was ... treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the action. *Id.* at 557. If the employer does so, the burden shifts back to the plaintiff, who then must establish either that the employer's reason was pretext for discrimination or that the plaintiff's protected status was a motivating factor for the action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

a.        **Director of Head Start Position**

Adams bases her racial discrimination claim on circumstantial evidence. As an African-American female, Adams is a member of a protected class. She applied for the Director of Head Start position and was qualified for the position, but she was rejected for that position.  The applicant selected for the position, Sartin, is a Caucasian female. As such, Adams states a *prima facie* case for race-based discrimination.

In providing nondiscriminatory reasons for choosing Sartin over Adams, the School Board cites Johnson's personal knowledge of each employee's work history, the employees' certifications, the results of the interview process, and the employees' experience.

Adams argues these reasons are pretextual.  She asserts that she had 15 years more experience than Sartin; she had transitioned to administrative assistant roles, whereas the entirety of Sartin's experience was in teaching; and she had a higher certification than Sartin.

Further, Adams shows that, during the interview process, Adams scored 184, and Sartin scored 190.  Thus, according to Adams, the applicants were separated by "a mere six points." [Doc. No. 50, p. 2].

The School Board replies that Johnson relied upon his personal knowledge of each candidate's comparative work performance and Johnson declined to offer Adams the position based on the two incidents which occurred in 2011 and 2012, where Adams left the school and went on a cruise without informing the Superintendent and improperly entered her time away as sick-leave, and where Adams had to be reminded that the campus grounds should be mowed throughout the school year.

Adams asserts that Johnson apparently considered these two "minor" infractions to be more significant than her considerable breadth of experience as a teacher and administrator and her higher certification levels.  However, Johnson testified that the first incident was a severe concern for him:

> Q. So why did something in 2012, which was six years prior, affect her position in 2018?
>
> A. Just -- just the severity of it, to me.
>
> Q. Of not --
>
> A. She was absent without leave and that affected my judgment of her, leaving 450 kids, 50 employees, and going on a cruise and being absent for a week without letting me know.

[Johnson deposition, Doc. No. 27-6, p. 7].  Johnson also testified that he considered the second incident to be significant because:

> A. . . . I had some complaints made to the board member. The board member called me about her not keeping the campus up. And that was very important to me because we were trying to pass taxes, renovate some schools, and I tried to get the principals to keep their schools clean and manicured on the outside because I thought that made a difference with voters on tax issues.

[*Id.*, p. 5].

The School Board further takes issue with Adams's attempt to discount the difference in interview scores as being "a mere 6 points."  The School Board states that what cannot be discounted is that a diverse group of reasonable individuals agreed Sartin was the top selection, even after considering education and experience, along with the other desired attributes for the position. The School Board concludes that Johnson gave due weight to the interview scores when

making the final selection, and that there is no evidence in the record to support a racial animus toward Plaintiff in making the final selection.

Because the School Board provided nondiscriminatory reasons for the adverse action, the burden shifted back to Adams to show that the reasons were pretextual or that her protected status was a motivating factor in her not being promoted. *See Alvarado*, 492 F.3d at 611. Adams has failed to make such a showing.

Adams argues that it is well-settled that where the employer's proffered reason for refusing to hire or promote an employee is that it selected the "best qualified" candidate, pretext may be inferred by evidence of the plaintiff's superior qualifications: "[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 US 454, 456-457 (2006); *Farver v. McCarthy* (8th Cir. 2019) 931 F3d 808, 812].

However, Adams has failed to show that she clearly possessed superior qualifications. Although she may have had more years of teaching experience than Sartin, Johnson could have been justified in concluding that Sartin possessed superior qualifications, after considering his personal knowledge of each employee's work history, the employees' certifications, the results of the interview process, and the employees' experience.

As indicated above, the interview process itself took into account each candidate's experience, and even after considering that Adams had more years of teaching experience, the diverse interview committee nevertheless scored Sartin higher than Adams. [Doc. No. 27-7]

A plaintiff's subjective belief that she was the victim of racial discrimination is insufficient to create an inference of discriminatory intent. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004).

14

Accordingly, the School Board's motion seeking the dismissal of Adams's claim of racial discrimination with regard to the Director of Head Start position is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

### b.      Student Services Position

Adams contends she expressed her interest in the Student Services position at Franklin High School to Dr. Gunter, who proffered her name as a potential candidate for the position to Johnson. Adams was rejected for that position. The applicant selected for the Student Services position was outside of Adams's protected class, as Brian Rogers is a Caucasian male. As such, Adams asserts that she has stated a *prima facie* case for race-based discrimination.

The School Board, on the other hand, asserts that there was no adverse action, in that Adams never formally applied for the position, and, further, that the position would have been a demotion from her position as curriculum facilitator in the central office, with possibly a reduction in pay.

The School Board further asserts that Adams has failed to show that she was treated less favorably than similarly situated individuals outside the protected group. As an initial matter, she was not similarly situated to the those considered for the position, all of whom were not employed with the district. The School Board argues that it is apparent that Johnson sought individuals who were not currently employed to fill that unfilled opening, and, ultimately, a former employee was placed in that position. Secondly, if others employed by the school district had been interested in a transfer, regardless of race, they too would not have had that opportunity. Additionally, Johnson actually hired an African-American female who later resigned before starting the position, further

evidencing that Adams was not treated less favorably than similarly situated individuals outside of the protected group, according to the School Board.

Adams responds that the School Board is attempting to mask its discriminatory hiring practices by demonstrating that the position was offered at least once to another candidate in her protected class [Doc. No. 50, p. 11].

The Court finds that Adams has failed to establish a *prima facie* case of racial discrimination, in that she has failed to establish disparate treatment. The evidence that the School Board offered the position to someone in the same protected group as Adams is uncontroverted. Johnson testified:

> A. Well, let me go back and tell you what happened on the position. We had the opening and we advertised it and we went through an interview process and we actually named a young lady that worked in Monroe that was from Winnsboro, a black, for the position. She went through payroll, she registered, did everything she was supposed to do to come to work for us, but a day before school opened, she called and resigned. So we were scrambling for somebody to fill that position. So the principal and I started talking about who could we get, who could we find on such short notice to help, because that position was crucial to the front office and the high school. And that's what happened with that.
>
> We had hired -- I think she was a counselor and she was working at Swanson Correctional Institute. And she actually accepted the job. I appointed her, and then the day before school started, she called and told us she would not come. And that's when we started scrambling to find someone.

[Johnson deposition, Doc. No. 27-6, p. 8]. Adams has failed to produce any evidence to support her contention that the School Board was attempting to mask its alleged discriminatory practices. Adams, therefore, has failed to demonstrate that she received unfavorable treatment because she was a black female.

Accordingly, the School Board's motion seeking the dismissal of Adams's racial discrimination claim with regard to the Student Services position is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

### c.      Position at Horace G. White

Adams alleges that the School Board advertised a Principal position with Horace G. White Alternative school, but before she could apply, Johnson decided to transfer Tara Robbins ("Robbins"), Caucasian female, to the position. Johnson further opted to modify the position from that of Principal to that of Administrative Assistant.

The School Board responds that Adams's credentials for this position were not considered as she did not apply for the position, nor did she express an interest in the position.  As indicated above, the position at Horace G. White had been that of a principal, but upon retirement of the former principal, the Superintendent (Johnson) changed the position to that of an Administrative Assistant, reasoning that based on changes in programming, there was to be less administrative work required at the site, and a principal – with a principal's salary – was no longer necessary for the position. The School Board asserts that saving money is a legitimate non-discriminatory reason for the action. With respect to Robbins, the School Board asserts that this this was essentially a transfer, which is well within the Superintendent's authority.  Robbins, a valued employee, had expressed that she would be resigning her position to take a job in another district. In an effort to persuade her not to resign, Johnson suggested she apply for the position. Robbins agreed, and she was ultimately selected. Here, too, the School Board asserts it has articulated a legitimate non-discriminatory reason for the selection. There is no evidence in the record, according to the School Board, that would show or tend to show that decisions made with respect to the position at Horace

G. White were pretext for discrimination – particularly where Johnson was unaware of Adams's interest in the position

Adams replies that, while an employee normally must prove he or she applied for and was denied a promotion, this prong is not required where the employer does not notify employees of available promotions or provide a formal mechanism for promotion applications.

The Court finds that Adams has failed to establish a *prima facie* case of racial discrimination as to this position.  It is undisputed that she did not submit an application or express any interest in the position.  Further, contrary to her contentions that the School Board failed to notify its employees of available positions, the School Board has provided a copy of an advertisement for the position of "Administrator of Horace G. White Learning Center" published August 1, 2018, in the *Franklin Sun* newspaper.  [Doc. No. 27-13].

Further, assuming *arguendo* that Adams had established a *prima facie* case, the School Board has given legitimate, nondiscriminatory reasons for filling that position, and Adams has failed to produce any evidence of pretext.

Accordingly, the School Board's motion seeking judgment as a matter of law dismissing Adams's claim of racial discrimination with regard to the position at Horace G. White is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

## III.    CONCLUSION

For the reasons set forth above, the Court GRANTS the School Board's Motion for Summary Judgment [Doc. No. 27].  Plaintiff Vanessa Adams's claims are DISMISSED WITH PREJUDICE.  All pending motions [Doc. Nos. 29, 39] are DENIED AS MOOT.

Monroe, Louisiana, this 6th day of April, 2021.

                                           **TERRY A. DOUGHTY**
                                           **UNITED STATES DISTRICT JUDGE**